UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　　:　　CASE NO. 94- 65 -Cr-T- 24 (E)
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
JAN WEEKS-KATONA,　　　　　　　　:
JASON SPENCER WEEKS,　　　　　　 :
HARRY W. "BILL" MARRERO, JR.,　 :
THEODORE T. NAVOLIO,　　　　　　 :
and　　　　　　　　　　　　　　　 :
DAVID J. ROSE.　　　　　　　　　 :
　　　　　　　　　　　　　　　　　:


## INDICTMENT

The Grand Jury charges:

### COUNT ONE

### CONSPIRACY

#### A. INTRODUCTION

At all times material to this Indictment:

1.　The Jan Weeks Group was an unincorporated and
informal association of business entities and corporations
controlled by JAN WEEKS-KATONA, and doing business in the Middle
District of Florida.　The business entities included, but were
not limited to: Senior Resource Management, Inc; Florida Guardian
Realty, Inc.; and, Mellow Media, Inc.

2.　Premier Benefit Corporation (hereinafter, "PBC")
was a closely held corporation, organized by JASON SPENCER WEEKS
in accordance with the laws of Florida.　Its principal place of

business was One Urban Center, 4830 West Kennedy, Suite 460, Tampa, Florida.

3.   Premier Benefit Corporation of America (hereinafter "PBCA") was a company, separately incorporated by JASON SPENCER WEEKS, which was operated interchangeably with PBC.  PBCA was used as a conduit for funds which had been raised from the sale of "capital note certificates" (hereinafter "capital notes").

4.   Premier Benefit Capital Trust (hereinafter,"PBCT") was an unincorporated enterprise, doing business in the Middle District of Florida, and elsewhere, under the guise of a "trust", and in association with, and as a successor to, PBC.

5.   Premier Benefit Capital Trust Corporation (hereinafter, "PBCT Corp.") was an entity incorporated in Nevada by THEODORE T. NAVOLIO and HARRY W. "BILL" MARRERO for the purpose of receiving funds from PBCT.

6.   JAN WEEKS-KATONA was the founder of the Jan Weeks Group, the President and a director of PBC.  She was an officer of PBCA.  JAN WEEKS-KATONA also functioned as the General Trust Manager and chief executive officer of PBCT.

7.   JASON SPENCER WEEKS was an executive assistant to JAN WEEKS-KATONA, his natural mother, in the operation of the Jan Weeks Group.  He was a Vice-president of PBC, and the President of PBCA.  He functioned as the Executive Trust Manager, chief financial officer and Treasurer of PBCT.

8.   THEODORE T. NAVOLIO was a "trustee" of PBCT who was in charge of the Premier Legal Department (hereinafter, "PLD"),

2

PBCT and PLD officers and documents described NAVOLIO as an
"attorney" for PBCT.

9.   HARRY W. "BILL" MARRERO was a "trustee" of PBCT who
worked in the Premier Legal Department.   MARRERO was also
described as an "attorney" for PBCT.

10.   DAVID J. ROSE was the incorporator of First
Financial Foundation, Inc. (hereinafter, "FFF"), a member of the
Premier Legal Department and a close associate of WEEKS-KATONA,
WEEKS, NAVOLIO and MARRERO.

11.   A capital note was an investment instrument,
marketed by Jan Weeks Group, PBC, PBCA and PBCT in various
configurations, and at various times from 1990 - 1993.   A capital
note was alleged to be an extremely safe and secure instrument
which promised to pay an investor a high rate of interest, in
exchange for a specific investment for a minimum period of time.

12.   Premier Financial Services (hereinafter "PFS")
served as the PBCT marketing arm, and recruited a sales force of
independent agents for PBCT. PFS, and its associates, marketed
capital notes as agents of PBCT in at least twenty-eight states
in the continental United States.

13.   Premier Legal Department (hereinafter, "PLD") was
an informal association of individuals, including THEODORE T.
NAVOLIO, HARRY W. "BILL" MARRERO and DAVID J. ROSE, within PBCT
which purported to represent the legal interests of PBCT in its
dealings with state and federal regulating agencies.   Its

3

principal place of business was 641 W. Lake Mary Blvd, Suite 131, Lake Mary, Florida.

14.    Citizens Law School was an unincorporated entity created by DAVID J. ROSE with THEODORE T. NAVOLIO in 1992 for the purpose of providing advice on "avoidance" of income tax liability, and other asset protection services, including the creation of "common law trusts".  Its principal place of business was 641 W. Lake Mary Blvd., Suite 131, Lake Mary Florida.

15.    First Financial Foundation, Inc. (hereinafter, "FFF") was a corporation, established by DAVID J. ROSE in 1993. THEODORE T. NAVOLIO was the President and Treasurer of FFF.  This corporation was used as a conduit for the transfer of funds obtained by PBCT through the sale of capital notes.  The principal place of business of FFF was 641 W. Lake Mary Blvd., Suite 131, Lake Mary, Florida.

16.    Aames Acceptance Company (hereinafter "Aames Co.", was an unincorporated business organization which was established by DAVID J. ROSE to act as a conduit for funds generated by PBCT. The principal place of business of Aames Co. was 641 W. Lake Mary Blvd., Suite 131, Lake Mary Florida.

17.    An unincorporated business organization, also known as a "UBO", was a purported business entity, which was not organized as a corporation, a partnership nor properly licensed, registered or qualified to do business.

18.    General Service Organization, Inc. (hereinafter "GSO"), was a corporation established by JASON SPENCER WEEKS.

4

JAN WEEKS-KATONA and JASON SPENCER WEEKS were the only officers
and directors of GSO.

     19.  Douglas J. Carpa was an individual who marketed
"common law trust" packages to JAN WEEKS-KATONA.

     20.  A "common law trust", also known as a private
trust, was an entity which the defendants alleged was established
in accordance with provisions of the Constitution.  Defendants
claimed that these trusts were not subject to the scrutiny or
regulation of state or federal officials.  These entities were
not established in accordance with The United States Code or
state statutes, which regulated securities, investment contracts
and business trusts.

     21. Dorchester Holding Trust (hereinafter,
"Dorchester") and Newcastle Holding Trust, also known as New
Castle Trust (hereinafter, "Newcastle") were UBOs created
simultaneously with PBCT and other trusts by Douglas Carpa.  The
"Dorchester" and "Newcastle" trusts were used to take title to
two sea-side mansions on Belleair Shores, Florida for the benefit
of JAN WEEKS-KATONA and JASON SPENCER WEEKS.

     22.  Windsor Management Trust, Edinborough Management
Trust, Breckenridge Management Trust and Wales Management Trust
were UBOs created in July 1992 for the purpose of functioning as
depositories or conduits for funds raised by PBCT through the
sale of capital notes.  The funds placed in these trusts were for
the benefit of JAN WEEKS-KATONA and JASON SPENCER WEEKS.

5

23.  The Securities and Exchange Commission (hereinafter "SEC") was an agency of the United States of America, which was empowered by federal law to insure compliance with Title 15 of the United States Code.

24.  In July 1993 the SEC, through its lawful representative, Mr. Gregory Little, Esq., initiated a Complaint for Injunctive and Other Relief (Case No. 93-1079-Civ-T-15(C)) against PBCT and its trustees in the United States District Court for the Middle District of Florida, in accordance with Title 15, United States Code, §20(b) and §20(d).

25.  In July 1993 United States District Judge Steven D. Merryday was designated to preside over Case No. 93-1079-Civ-T-15(C).

26.  In July 1993 United States District Judge Merryday appointed Mr. Charles Stutts as Receiver for the PBCT Estate.

27.  The Office of the Comptroller for the State of Florida; the Office of the Secretary of State for the State of North Carolina; and, the Pennsylvania Securities Commission were state agencies with authority to oversee and regulate the sale of capital notes within their respective jurisdictions.


B.  CONSPIRACY TO COMMIT OFFENSES
    AGAINST THE UNITED STATES

28.  Beginning in or about December 1990, and continuing thereafter until in or about March 1994, in the Middle District of Florida, and elsewhere,

JAN WEEKS-KATONA,
JASON SPENCER WEEKS,
DAVID J. ROSE,
THEODORE T. NAVOLIO,
and
HARRY W. "BILL' MARRERO,

defendants herein, did knowingly and willfully combine, conspire,
confederate and agree with one another and with others both known
and unknown to the grand jury, to commit the following offenses
against the United States:

      (a)   to knowingly and willfully devise and execute a
scheme and artifice to defraud and for obtaining
money and property by means of false and
fraudulent pretenses, representations and
promises, in violation of Title 18, United States
Code, Section 1341;

      (b)   to knowingly and willfully devise and execute a
scheme and artifice to defraud and for obtaining
money and property by means of false and
fraudulent pretenses, representations and
promises, in violation of Title 18, United States
Code, Section 1343;

      (c)   to knowingly transport, transmit or transfer
and cause to be transported, transmitted and
transferred, in interstate and foreign commerce
any goods, wares, merchandise, securities or money
having a value in excess of $5,000.00, knowing the

7

same to have been stolen, converted or taken by
fraud, in violation of Title 18, United States
Code, Section 2314;

(d)   to knowingly conduct financial transactions
affecting interstate commerce, which involved the
proceeds of specified unlawful activity, that is,
mail fraud, wire fraud and interstate
transportation of stolen property with the intent
to promote the carrying on of specified unlawful
activity, and knowing the transactions were
designed to conceal the nature, source, location,
ownership or control of proceeds of specified
unlawful activity, all in violation of Title 18,
United States Code, Section 1956(a)(1);

(e)   to corruptly and by threats, endeavor to
influence, obstruct and impede the due and proper
administration of the law under which any pending
proceeding is being had before any department or
agency of the United States, in violation of Title
18, United States Code, Section 1505; and,

(f)   to corruptly and by threats and force, and by any

8

threatening letter and communication, influence,
obstruct, and impede, and endeavor to influence,
obstruct, and impede, the due administration of
justice, in violation of Title 18, United States
Code, Section 1503.

### C. MANNER AND MEANS

29.  It was further part of the Conspiracy that the
defendants, and others, in order to defraud investors, and to
encourage the sale of capital notes and investment in their other
products, would and did:

a.  Provide false and misleading information to
investors concerning the safety and security of
the capital notes which were sold to investors.

b.  Provide false and misleading information to
investors concerning the insurance coverage
available to protect against loss on capital
notes.

c.  Provide false and misleading data concerning
financial institutions in which proceeds from
the sale of capital notes were deposited.

d.  Provide false and misleading information
regarding account management.

9

e.   Provide false and fraudulent data concerning the existence of and size of cash reserves.

f.   Provide false and misleading information concerning the type and frequency of audits.

g.   Provide false and misleading information regarding the identity of auditors.

h.   Provide false and fraudulent details about the identity, status, number and liquidity of other capital note investors.

i.   Provide false and fraudulent information concerning the basic investment strategy, called "factoring".

j.   Provide false and fraudulent estimates concerning the amount of factoring which had been completed.

k.   Provide false information concerning the track record, experience and ability of the personnel who controlled the investment principal.

10

1.    Provide false and misleading data concerning the conversion of the investment proceeds by defendants, co-conspirators and their agents.

30.    It was further part of the Conspiracy that the defendants and others would and did provide false, misleading and fraudulent profit figures and asset valuations in PBC/PBCT quarterly reports, news letters and periodic assessments to investors.

31.    It was further part of the Conspiracy that the defendants, and others, would and did provide false, misleading and fraudulent information to the owners of capital notes regarding, "untaxing" themselves and their investments, the use of "complex" or "common law" trusts and the effect upon their state and federal tax liability.

32.    It was further part of the Conspiracy that the defendants, and others, would and did falsely claim that their trust organizations, and capital note certificates, were outside the jurisdiction and venue of state and federal regulatory agencies, and not subject to governmental scrutiny.

33.    It was further part of the Conspiracy that the defendants, and others, would and did create a complex system of overlapping and interconnected corporations, trusts, and unincorporated business organizations with similar sounding and misleading names and titles.

11

34.  It was further part of the Conspiracy that the defendants, and others, would and did create a complex system of bank accounts in different, but similar sounding names; located in several different institutions, and dispersed in several separate geographic locations; both within and outside the jurisdiction of the United States.

35.  It was further part of the Conspiracy that the defendants, and others, would and did transfer funds raised through the fraudulent sale of capital notes, among and between the various bank accounts established in their names, the names of their organizations and in the names of other individuals and entities.

36.  It was further part of the Conspiracy that defendants, and others, would and did use and cause to be used, harassment and intimidation against various persons; and did thereby attempt to hinder, delay, prevent and dissuade such individuals from reporting to the SEC and state regulatory agencies, the extent of the Conspiracy to defraud.

37.  It was further part of the Conspiracy that the defendants, and others, would and did corruptly endeavor to influence, obstruct and impede and did influence, obstruct and impede, employees of the federal and state regulatory agencies, during these agencies attempts to oversee and regulate the sale and transfer of capital notes by defendants and agents of PBC/PBCT.

38.   It was further part of the Conspiracy that the defendants, and others, would and did corruptly endeavor to influence, obstruct and impede, and did influence, obstruct and impede, the SEC and the United States District Court in the execution of the Court's Order for injunctive relief, which was entered against the defendants, PBCT and others.

39.   It was further part of the Conspiracy that the defendants and others, would and did use the proceeds of their fraud to unjustly enrich themselves, to purchase sea-side mansions, and to obtain exorbitant executive perks and salaries.

40.   It was further part of the Conspiracy that the defendants, and others, would and did corruptly obstruct the SEC and the United States District Court proceedings by burning, destroying, altering, hiding and misappropriating the books, records, documents, account information and other evidence of PBC/PBCT and related entities.

41.   It was further part of the Conspiracy that the defendants, and others, would and did corruptly endeavor to influence, obstruct and impede and did obstruct and impede, the SEC and United States District Court proceedings by providing false and fraudulent information to the Bankruptcy Court of the Middle District of Florida.

42.   It was further part of the Conspiracy that the defendants, and others, would and did corruptly endeavor to obstruct and impede, and did obstruct and impede, the SEC

13

proceeding by providing false information to the holders of
capital notes.

43. It was further part of the Conspiracy that the
defendants, and others, would and did flee the jurisdiction of
the United States, and enter Mexico, in order to continue to
obstruct the SEC proceeding, and to steal funds generated through
the sale of capital notes.

44. It was further part of the Conspiracy that the
defendants, and others, would and did corruptly agree to provide
false information, and did provide false information, during
depositions taken in the SEC proceedings.

45. It was further part of the Conspiracy that the
defendants, and others, would and did create and transmit, and
cause to be created and transmitted, through the United States
Mails, materially false, fraudulent and misleading statements to
create the false appearance that PBC, PBCA, PBCT, PBCT Corp, PFS,
FFF, PLD, Citizens's Law School and Florida Citizen's Law School
were responsible, successful, viable and law-abiding business
enterprises.

46. It was further part of the Conspiracy that the
defendants and others, would and did create and transmit, and
cause to be created and transmitted, sounds and data by wire, in
interstate commerce, which sounds and data were materially false,
fraudulent and misleading.

47. It was further part of the Conspiracy that the
defendants, and others, would and did misrepresent, conceal and

14

hide the purpose of the acts done in furtherance of the conspiracy.

## D. <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish its objects, design and purposes, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere.

(1)   In or about December 1990 Defendant JAN WEEKS-KATONA, and others, incorporated Premier Benefit Corporation (PBC).

(2)   In or about May 1991 Defendants JAN WEEKS-KATONA, JASON SPENCER WEEKS, and others, began to sell, convey and market capital note certificates on behalf of PBC.

(3)   On or about May 15, 1991 Defendants JAN WEEKS-KATONA and JASON SPENCER WEEKS, acting on behalf of PBC, opened an account (#103-632-469) with Southeast Bank for the deposit of funds generated from the sale of capital notes.

(4)   On or about May 15, 1991 defendants deposited $8,000.00 obtained from Ms. Dorothy Brissel, from the sale of capital notes, into the Southeast Bank account.

(5)   In or about October 1991 Defendant JASON SPENCER WEEKS incorporated General Service Organization, Inc. (GSO).

(6)   On or about October 15, 1991 Defendant JASON SPENCER WEEKS, acting for GSO, opened an account (#90002623) with

15

the Chase Manhattan National Bank of Florida in St. Petersburg,
Florida (Chase).

(7)   In or about July 1991 Defendant JAN WEEKS-KATONA,
acting on behalf of PBC, distributed through the United States
Mails, a PBC quarterly report for the period ending June 30,
1991.

(8)   On or about November 8, 1991 Defendant JASON
SPENCER WEEKS withdrew $11,000.00 from the GSO account
(#90002623) at Chase.

(9)   On or about November 18, 1991 Defendant JASON
SPENCER WEEKS executed check #121 on the GSO account (#90002623)
in the amount of $35,000.00, and payable to Defendant JAN WEEKS-
KATONA.

(10)   On or about March 25, 1992 Defendant JAN WEEKS-
KATONA withdrew, transferred and otherwise obtained $69,000.00
from the GSO account (#90002623) at Chase.

(11)   On or about April 1, 1992 defendants and others
began to use an entity identified as Premier Benefit Corporation
of America (PBCA), in conjunction with PBC.

(12)   In or about April 1992 Defendant JAN WEEKS-KATONA
entered into a business arrangement with Defendant THEODORE T.
NAVOLIO to market "common law trusts" and "untaxing" services in
conjunction with PBC.

(13)   On or about July 7, 1992 Defendants JAN WEEKS-
KATONA, JASON SPENCER WEEKS, and others, established Premier

16

Benefit Capital Trust (PBCT) to act in association with, and to succeed, PBC.

(14)  On or about July 7, 1992 Defendant JAN WEEKS-KATONA, and others, established the "Dorchester" and "Newcastle" trusts, as well as the Edinborough, Wales, Windsor and Breckenridge management trusts.

(15)  On or about July 10, 1992 Defendant JAN WEEKS-KATONA sent a letter, through the United States Mails, wherein she informed PBC investors (capital note holders) of the evolution of PBCT. In this letter Defendant WEEKS-KATONA falsely informed investors that PBC has transferred $26,000,000.00 in assets to PBCT.

(16)  On or about July 15, 1992 Defendant JAN WEEKS-KATONA provided a report to PBC/PBCT investors concerning the adoption and future sales of  "complex" trust systems.

(17)  On or about July 23, 1992 Defendant JASON SPENCER WEEKS transferred $20,000.00 in PBC/PBCT funds to his personal account (#92015161) at Chase.

(18)  On or about September 14, 1992 Frank Katona, husband of Defendant JAN WEEKS-KATONA, received $71,800.00 from the GSO account at Chase.

(19)  In or about January 1993 the defendants and others established Premier Financial Service (PFS) to act as the marketing arm for PBCT in order to sell capital notes in various states.

(20)  From in or about January 1993 to in or about June 1993, defendants transferred $457,000.00 from PBCT to PFS.

(21)  In or about March 1993, defendants established the Premier Legal Department at Citizens Law School to devise tactics and strategies for using civil litigation to intimidate and harass state and federal employees of regulatory agencies.

(22)  On or about March 25, 1993 Defendant JAN WEEKS-KATONA, acting on behalf of "Newcastle" Trust signed a contract to purchase a 9,000 square foot, sea-side mansion located at 280 Gulf Blvd, Belleair Shores, Florida, for the purchase price of $2,840,000.00.

(23)  On or about March 25, 1993 Defendant JAN WEEKS-KATONA, acting on behalf of "Dorchester" Trust signed a contract to purchase a 10,000 square foot, sea-side mansion located at 1740 Gulf Blvd, Belleair Shores, Florida, for the purchase price of $1,196,000.00.

(24)  From on or about March 26, 1993 to on or about June 30, 1993 Defendants JAN WEEKS-KATONA, JASON SPENCER WEEKS and others used over $962,000.00 in PBC/PBCT funds, which were obtained through the sale of capital notes, to make down payments for the purchase of the two sea-side mansions in Belleair Shores, Florida.

(25)  In or about March 1993 Defendants THEODORE T. NAVOLIO and HARRY W. "BILL" MARRERO agreed to become "litigation" trustees of PBCT in order to file pro-se motions in civil proceedings, on behalf of PBCT.

18

(26)  On or about April 30, 1993 defendants, and others, transferred $300,000.00 from PBCT to Aames Acceptance Company.

(27)  On or about April 30, 1993 defendants, and others, transferred $50,000.00 from PBCT to Citizen's Law School.

(28)  From on or about May 5, 1993 to on or about July 8, 1993 defendants transferred $1,540,690.00 from PBCT to the account of FFF at NationsBank in Orlando, Florida.

(29)  From on or about May 5, 1993 to on or about June 12, 1993, defendants mislead, impeded, hindered and obstructed the SEC during that agency's review and inquiry.

(30)  On or about May 10, 1993 Defendant THEODORE T. NAVOLIO, acting on behalf of PBCT, PLD and Citizens' Law School transmitted data by wire from Florida to North Carolina, to wit: a telephonic facsimile of a [false] Arrest Warrant for Earl Manning, an investigator for the North Carolina Secretary of State, a state agency attempting to regulate the sale of PBCT capital notes.

(31)  From on or about May 18, 1993 to on or about July 15, 1993 Defendant THEODORE T. NAVOLIO received $111,500.00 from PBCT (through FFF).

(32)  From on or about May 18, 1993 to on or about July 19, 1993 Defendant HARRY W. "BILL" MARRERO received $50,000.00 from PBCT which had been generated from the sale of capital notes.

19

(33)  On or about May 24, 1993 Defendant THEODORE T. NAVOLIO, acting on behalf of PBCT, PLD and Citizens' Law School transmitted data by wire from Florida to Pennsylvania, to wit: A telephonic facsimile of a [false] Arrest Warrant for Scott A. Lane, Esq., an attorney for the Pennsylvania Securities Commission, a state agency attempting to regulate the sale of PBCT capital notes.

(34)  From on or about May 24, 1993 to on or about July 16, 1993 Defendant DAVID J. ROSE received $53,330.57 from PBCT (through FFF).

(35)  On or about May 26, 1993 Defendants THEODORE T. NAVOLIO and JASON SPENCER WEEKS caused the wire transfer of $100,000.00 of PBCT funds from the NationsBank account of FFF in Lake Mary, Florida to Bank of America International, New York, New York, for credit to the account of Cayman National Bank, Ltd.

(36)  On or about June 12, 1993, Defendants JAN WEEKS-KATONA, JASON SPENCER WEEKS, THEODORE T, NAVOLIO, HARRY W. "BILL" MARRERO and others, acting on behalf of PBCT and PFS, held a seminar in Chicago, Illinois for the purpose of obstructing the proceedings of federal and state agencies which were attempting to regulate the sale of PBCT capital notes.

(37)  On or about June 30, 1993 Defendant HARRY W. "BILL" MARRERO, acting as a trustee for "Newcastle" Trust, signed a settlement statement for the purchase of the 9,000 square foot, sea-side mansion at 280 Gulf Blvd, Belleair Shores, Florida.

20

(38)   On or about June 30, 1993 Defendant HARRY W. "BILL" MARRERO, acting as a trustee for "Dorchester" Trust signed a settlement statement for the purchase of the 10,000 square foot, sea-side mansion at 1740 Gulf Blvd, Belleair Shores, Florida.

(39)   From on or about July 19, 1993 to on or about February 5, 1994, Defendants THEODORE T. NAVOLIO, HARRY W. "BILL" MARRERO, DAVID J. ROSE, and others, obstructed the SEC proceedings by filing false bank schedules, soliciting funds from PBCT investors and holding themselves out to be "trustees" of PBCT.

(40)   From on or about August 13, 1993 to on or about August 30, 1993, Defendant THEODORE T. NAVOLIO, acting on behalf of PBCT, filed false documents with the Bankruptcy Court for the Middle District of Florida in Case No. 93-3959-6CI.

(41)   On or about August 30, 1993 in Sanford, Florida, Defendants JASON SPENCER WEEKS and DAVID J. ROSE negotiated a $35,085.00 check payable to PBCT and PFS.

(42)   On or about September 1993, on a farm near Daytona Beach, Florida, Defendants JAN WEEKS-KATONA, JASON SPENCER WEEKS, DAVID J. ROSE, and others, burned and destroyed the books, documents, records and negotiable instruments of PBC/PBCT, in order to obstruct the proceedings of the SEC, and various state agencies which were attempting to regulate the sale of PBCT capital notes.

21

(43)   In or about September 1993, in order to obstruct pending SEC and state proceedings, Defendants JAN WEEKS-KATONA, JASON SPENCER WEEKS, DAVID J. ROSE and THEODORE T. NAVOLIO did flee the jurisdiction of the United States of America, and enter Mexico, with over $70,000.00 in funds obtained by fraud.

(44)   In or about September 1993, Defendants JAN WEEKS-KATONA and JASON SPENCER WEEKS did discuss and plan the murder of federal and state regulatory personnel, a United States District Judge and judicial officers, appointed by the Court to resolve the SEC proceedings.

(45)   On or about November 30, 1993, Defendant THEODORE T. NAVOLIO filed a "Writ of Recision" concerning his testimony under oath at depositions in the SEC proceedings.

(46)   On or about February 5, 1994 Defendants THEODORE T. NAVOLIO and DAVID J. ROSE held a seminar in which they provided PBCT capital note owners with false information and solicited funds.

(47)   The Grand Jury incorporates by reference in their entirety Counts TWO through THIRTEEN as overt acts in furtherance of the Conspiracy.

All in violation of Title 18, United States Code, Section 371.

22

## COUNTS TWO THROUGH FIVE

## THE MAIL FRAUD COUNTS

1. Beginning in or about December 1990 and continuing until in or about March 1994,

JAN WEEKS-KATONA,
JASON SPENCER WEEKS,
THEODORE T. NAVOLIO,
and
HARRY W. "BILL" MARRERO,

defendants herein, aiding and abetting each other, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, hereinafter more particularly set forth, well knowing at the time that these pretenses, representations, and promises would be and were false and fraudulent when made.

2. The substance of the scheme and artifice to defraud, and its manner and means, are described in those paragraphs contained in Parts A and C of Count One of this Indictment, and the Grand Jury realleges and incorporates by reference those paragraphs in their entirety as though fully set forth herein.

3. On or about the dates specified in each Count below, in the Middle District of Florida, for the purpose of executing the aforementioned scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, the defendants

23

named in each count below, did knowingly place, and caused to be
placed in an authorized depository for mail matter, to be sent
and delivered by the United States Postal Service, and knowingly
caused to be delivered by mail according to the direction
thereon, the following items:

### COUNT TWO

**DEFENDANTS:**     JAN WEEKS-KATONA
                    JASON SPENCER WEEKS

**DATE:**           On or about May 6, 1991

**MAILING:**        Letter, from Senior Resource Management, Inc (Jan
                    Weeks Group), Post Office Box 8554, Clearwater,
                    Florida. Addressed to Chester Jagiello, 10336
                    Bannock Street, Spring Hill, Florida, 34608.
                    Executed by Jan Weeks (sic).

### COUNT THREE

**DEFENDANTS:**     JAN WEEKS-KATONA
                    JASON SPENCER WEEKS

**DATE:**           On or about January 18, 1993

**MAILING:**        Capital Note Certificate, (#C3010015); To: Howard
                    T. & Elnora E. Olson, 509 Lake Circle, Plant City,
                    Florida, 33565; in the amount of $40,000.00 from
                    PBCT; Executed by Jan Weeks-Katona, General Trust
                    Manager.

### COUNT FOUR

**DEFENDANTS:**     JAN WEEKS-KATONA
                    JASON SPENCER WEEKS
                    THEODORE T. NOVOLIO
                    HARRY W. "BILL" MARRERO

24

**DATE:**          On or about June 15, 1993

**MAILING:**       Premier Benefit Capital Trust, Common Law,
                   Contract For Certificate, (#300142); To: Curtis
                   L. or Jeanice L. Spear; in the amount of
                   $103,000.00 (Full Redemption value: $112,314.25);
                   Executed by Jason Spencer Weeks, Manager of
                   Investment Services.


                            COUNT FIVE

**DEFENDANTS:**    JAN WEEKS-KATONA
                   JASON SPENCER WEEKS
                   THEODORE T. NOVOLIO
                   HARRY W. "BILL" MARRERO

**DATE:**          On or about June 24, 1994

**MAILING:**       PBCT NEWSLETTER; State of the Organization
                   Report; From: Jan Weeks-Katona, General Trust
                   Manager; To: James and Rhoda Gridley.


        All in violation of Title 18, United States Code,

Section 1341 and 2.

                  COUNTS SIX THROUGH EIGHT
                  THE WIRE FRAUD COUNTS

    1.  Beginning in or about December 1990 and continuing until

in or about March 1994,
                       JAN WEEKS-KATONA,
                     JASON SPENCER WEEKS,
                     THEODORE T. NAVOLIO,
                         DAVID J. ROSE,
                             and
                   HARRY W. "BILL" MARRERO,

defendants herein, aiding and abetting each other, knowingly

devised and intended to devise a scheme and artifice to defraud,

and to obtain money and property by means of false and fraudulent

pretenses, representations, and promises, hereinafter more

                               25

particularly set forth, well knowing at the time that these
pretenses, representations, and promises would be and were false
and fraudulent when made.

2.   The substance of the scheme and artifice to
defraud, and its manner and means are described in those
paragraphs contained in parts A and C of Count One of this
Indictment, and the Grand Jury realleges and incorporates by
reference those paragraphs in their entirety as though fully set
forth herein.

3.   On or about the dates specified in each count below
in the Middle District of Florida, for the purpose of executing
the aforementioned scheme and artifice to defraud, and to obtain
money and property by means of false and fraudulent pretenses,
representations, and promises, the described defendants set forth
in each Count below did knowingly transmit, and cause to be
transmitted by means of interstate wire, certain signs, signals,
and sounds in each count below:

<u>COUNT SIX</u>

<u>DEFENDANTS:</u>    JASON SPENCER WEEKS
                 THEODORE T. NAVOLIO
                 HARRY W. "Bill" MARRERO
                 DAVID J. ROSE

<u>DATE:</u>         On or about May 26, 1993

<u>WIRE:</u>         Wire transmission of $100,000.00; From:
                 NationsBank, Lake Mary, Florida; To: Bank of
                 America International, New York, New York, Account
                 # 29819452, Cayman National Bank, Ltd., For
                 further credit to Account #63843.

26

## COUNT SEVEN

**DEFENDANTS:**     JAN WEEKS-KATONA
                    JASON SPENCER WEEKS
                    THEODORE T. NAVOLIO
                    HARRY W. "Bill" MARRERO

**DATE:**           On or about June 17, 1993

**WIRE:**           Wire Transmission of $650,000.00; From: Chase
                    Manhattan National Bank of Florida, St.
                    Petersburg, Florida; To: Continental National
                    Bank, Las Vegas, Nevada.


## COUNT EIGHT

**DEFENDANTS:**     THEODORE T. NAVOLIO
                    HARRY W. "BILL" MARRERO

**DATE:**           On or about May 21, 1993

**WIRE:**           Telephonic Facsimile of 2 letters; From: Harry W.
                    Marrero, PBCT Trustee; To: Scott A. Lane, Division
                    of Enforcement and Regulation, Pennsylvania
                    Securities Commission; Re: "Cease and Desist
                    Order"; with [false] Arrest Warrant for Scott A.
                    Lane, Esquire, executed by "the Honorable"
                    Theodore T. Navolio.

        All in violation of Title 18, United States Code,

Section 1343 and 2.

## COUNT NINE

### MONEY LAUNDERING

     From in or about March, 1993 to on or about July 1, 1993, in

the Middle District of Florida and elsewhere,

                    JAN WEEKS-KATONA,
                    JASON SPENCER WEEKS,
                    THEODORE T. NAVOLIO,
                HARRY W. "BILL" MARRERO,
                           and
                    DAVID J. ROSE,

defendants herein, did knowingly and willfully conduct and

attempt to conduct a financial transaction affecting interstate

27

commerce, to wit:  the transfer of title to real property located
at 280 Gulf Boulevard, Belleair Shores, Florida to The New Castle
Trust or Assigns, which involved the proceeds of specified
unlawful activity, that is, mail fraud and wire fraud, in
violation of Title 18, United States Code, Sections 1341 and
1343, with the intent to promote the carrying on of specified
unlawful activity, and knowing that the transaction was designed
in whole or in part to conceal and disguise, the nature, the
location, the source, the ownership and control of the proceeds
of said unlawful activity, and that while conducting and
attempting to conduct such financial transaction knew that the
property involved in the financial transaction represented the
proceeds of some form of unlawful activity.

    In violation of Title 18, United States Code, Sections
1956(a)(1) and 2.


### COUNT TEN

### MONEY LAUNDERING

    From in or about March, 1993, to on or about July 1, 1993,
in the Middle District of Florida and elsewhere,

                    JAN WEEKS-KATONA,
                    JASON SPENCER WEEKS,
                    THEODORE T. NAVOLIO,
                    HARRY W. "BILL" MARRERO,
                            and
                    DAVID J. ROSE,

defendants herein, did knowingly and willfully conduct and
attempt to conduct a financial transaction affecting interstate
commerce, to wit:  the transfer of title to real property located

                          28

at 1740 Gulf Boulevard, Belleair Shores, Florida to The
Dorchester Trust or Assigns, which involved the proceeds of
specified unlawful activity, that is, mail fraud and wire fraud,
in violation of Title 18, United States Code, Sections 1341 and
1343, with the intent to promote the carrying on of specified
unlawful activity, and knowing that the transaction was designed
in whole or in part to conceal and disguise, the nature, the
location, the source, the ownership and control of the proceeds
of said unlawful activity, and that while conducting and
attempting to conduct such financial transaction knew that the
property involved in the financial transaction represented the
proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections
1956(a)(1) and 2.


### COUNT ELEVEN

### INTERSTATE TRANSPORTATION OF STOLEN PROPERTY

1.  The substance of the scheme to commit offenses
against the United States, and its manner and means, are
described in paragraphs A and C of Count One of this Indictment,
and the Grand Jury realleges and incorporates by reference those
paragraphs, as though fully set forth herein.

2.  Beginning on or about September 4, 1993 and
continuing through on or about September 11, 1993, in the Middle
District of Florida, and elsewhere,


29

JAN WEEKS-KATONA,
JASON SPENCER WEEKS,
and
DAVID J. ROSE,

defendants herein, did knowingly transport, and cause to be transported in interstate and foreign commerce, money, of the value of $5,000.00, knowing the same to have been stolen, converted, or taken by fraud.

In violation of Title 18, United States Code, Sections 2314 and 2.


## COUNT TWELVE

### INTERSTATE TRANSPORTATION OF STOLEN PROPERTY

1.  The substance of the scheme to commit offenses against the United States, and its manner and means, are described in paragraphs A and C of Count One of this Indictment, and the Grand Jury realleges and incorporates by reference those paragraphs, as though fully set forth herein.

2.  Beginning on or about September 6, 1993 to on or about September 11, 1993, in the Middle District of Florida and elsewhere,

THEODORE T. NAVOLIO,

defendant herein, did knowingly transport, and cause to be transported in interstate and foreign commerce, money, of the value of $5,000.00 or more, knowing the same to have been stolen, converted, or taken by fraud.

In violation of Title 18, United States Code, Sections 2314 and 2.

30

## COUNT THIRTEEN

## OBSTRUCTION OF JUSTICE

On or about February 5, 1994 in the Middle District of Florida,

THEODORE T. NAVOLIO
and
DAVID J. ROSE,

defendants herein, did corruptly, and by threats, influence, obstruct, and impede and did endeavor to corruptly influence, obstruct and impede the due administration of justice in a proceeding, then pending before a federal court; to wit, Securities and Exchange Commission v. Premier Benefit Capital Trust, et al.; Case No. 93-1079-Civ-T-15(C) (now, 93-1079-Civ-T-25(C), in that Defendants THEODORE T. NAVOLIO and DAVID J. ROSE, aiding and abetting each other, contrary to an express order from the United States District Court to refrain from acting on behalf of PBCT and from directly or indirectly hindering, interfering or obstructing the efforts of the court-appointed Receiver in the conduct of his duties or to interfere in any manner with custody, management or control by the Receiver of the trust's funds, assets or premises, and did solicit the capital note investors to file false and misleading liens on the property held by the Receiver appointed by the Court, and did encourage the investors to file false and fraudulent "lis pendens" concerning the estate controlled by the Receiver, and did request that investors file pleadings for Declaratory Judgments in other forums where the SEC would not know about the pleadings, and did request that the

31

investors intentionally fail to notify the interested parties of the existence of the other civil pleadings.

In violation of Title 18, United States Code, Sections 1503 and 2.

## COUNT FOURTEEN

### CONSPIRACY TO MURDER

#### A. INTRODUCTION

At all times material to this Indictment:

1.    JAN WEEKS-KATONA was the founder, former chief executive officer and former General Trust Manager of Premier Benefit Capital Trust (PBCT), an unincorporated business organization, which had marketed over seven million dollars ($7,000,000.00) in capital note certificates to investors throughout the United States.

2.    JASON SPENCER WEEKS was the former chief financial officer and former Executive Trust Manager of PBCT.

3.    PBCT and its associated entities, to wit, PBC, PBCA, PBCT Corp., PFS, PLD, FFF, Citizens Law School and Aames Co. were under investigation by the Securities and Exchange Commission (SEC), the State of Florida, Office of the Comptroller, the Pennsylvania Securities Commission and the Office of the Secretary of State for North Carolina, as well as other state investigatory bodies.

4.    JAN WEEKS-KATONA was a defendant in a judicial proceedings before the United States District Court for the

Middle District of Florida, to wit, <u>Securities and Exchange Commission v. Premier Benefit Capital Trust</u>, Case No. 93-1079-Civ-T-15(C). United States District Judge Steven D. Merryday, was the presiding judicial officer in this matter.

5. On July 8, 1993 JAN WEEKS-KATONA was served with the complaint and all motions and requests for civil discovery, including depositions, interrogatories and requests for the books and records of PBCT.

6. JASON SPENCER WEEKS was aware that he, as a former trust manager, was being sought to provide a deposition in the judicial proceedings.

7. Mr. Gregory Little, Esquire was an attorney for the Securities and Exchange Commission who was assigned to represent the SEC in Case No. 93-1079-CIV-T-15C.

8. The Florida Office of the Comptroller assigned Mr. John Michael "Mike" Brown and Mr. Raymond Lemme to assist the SEC and to provide liaison between the state and federal proceedings.

9. On July 16, 1993 United States District Judge Merryday appointed Mr. Charles L. Stutts to act as Receiver for the assets of PBCT. Mr. Stutts retained Ms. Martha Cook, Esquire, from the Tampa law firm of Holland and Knight to act as his legal counsel.

10. The Receiver, Mr. Charles Stutts, seized various accounts of PBCT and related entities, took control of PBCT premises and sought to obtain dominion over other property

purchased with funds raised by PBCT through the sale of capital notes.

      11.  JAN WEEKS-KATONA and JASON SPENCER WEEKS engaged in unlawful flight across state and international borders to evade the jurisdiction of the United States District Court and state prosecutions.  They ignored the demands for civil discovery and actively sought to obstruct, impair, impede, hinder and defeat the SEC proceedings then pending in the United States District Court.

      12.  JAN WEEKS-KATONA and JASON SPENCER WEEKS viewed United States District Judge Steven D. Merryday, Receiver Charles L. Stutts, Ms. Martha Cook, Mr. Gregory Little, Mr. "Mike" Brown and Mr. Ray Lemme as members of a conspiracy to steal PBCT and its assets, and to cause them personal harm.

## B. CONSPIRACY TO MURDER

      13.  Beginning in or about September 1993 to in or about March 1994 in the Middle District of Florida, and elsewhere,

JAN WEEKS-KATONA
and
JASON SPENCER WEEKS,

defendants herein, did unlawfully, knowingly and willfully conspire, combine, confederate and agree together, and with other persons unknown to the Grand Jury to murder United States District Judge Steven D. Merryday, a violation of Title 18, United States Code, Section 1114.

34

## C. MANNER AND MEANS

14.   The substance of the scheme to commit offenses against the United States, and its manner and means, are described in those paragraphs contained in parts A and C of Count One of this Indictment, and the Grand Jury realleges and incorporates by reference those paragraphs in their entirety as though fully set forth herein.

15.   It was further part of the Conspiracy that defendants would and did identify specific individuals, who were directly or indirectly involved in the federal proceeding against PBCT, Case No. 93-1079-Civ-T-15(C), as members of a so-called "conspiracy" to steal PBCT and harm them.   Defendants identified United States District Judge Steven D. Merryday as a "conspirator".

16.   It was further part of the Conspiracy that defendants would and did formulate a plan to exact revenge upon the identified members of the so-called "conspiracy" to harm them.

17.   It was further part of the Conspiracy that defendants would and did use graphic materials to chart the litigation, and the interrelationships among and between the individuals that they had targeted.

18.   It was further part of the Conspiracy that the defendants would and did use the automated data processing capabilities of the lap-top computer, used by JASON SPENCER WEEKS, to track the litigation and targets.

35

19.  It was further part of the Conspiracy that the defendants would and did solicit other individuals to murder and assist in the commission of the murder of the targets.  United States District Judge Steven D. Merryday was among the individuals targeted for murder.

20.  It was further part of the Conspiracy that the defendants would and did possess destructive devices in violation of Title 18 of the United States Code.

21.  It was further part of the Conspiracy that defendants would and did attempt to obtain a specially designed sniper rifle and sniper scope.

22.  It was further part of the Conspiracy that defendants would and did attempt to regain possession of an AR-15, .223 calibre, Assault Rifle, and other weapons and firearms which JASON SPENCER WEEKS had stored prior to becoming a fugitive.

23.  It was further part of the Conspiracy that Defendant JASON SPENCER WEEKS would and did design, manufacture and possess functional silencers, in violation of Title 26 of the United States Code.

24.  It was further part of the Conspiracy that Defendant JASON SPENCER WEEKS would and did use the silencers in conjunction with a .22 calibre rifle.

25.  It was further part of the Conspiracy that defendants would and did make numerous improvements to the silencers in order to increase their effectiveness.

36

26.  It was further part of the Conspiracy that Defendant JASON SPENCER WEEKS would and did modify .22 calibre ammunition by cutting off the tips to make a bullet commonly known as a "dum-dum" round, in order to increase the lethality of the bullet.

27.  It was further part of the Conspiracy that Defendant JASON SPENCER WEEKS would and did modify .22 calibre ammunition by hollowing out the center mass to make a bullet commonly known as a "hollow point", in order to increase the lethality of the bullet.

28.  It was further part of the Conspiracy that Defendant JASON SPENCER WEEKS, while a fugitive, would and did practice and hone his hunting and stalking techniques, and marksmanship skills with the .22 calibre rifle, silencers and modified "dum dum" and "hollow point" ammunition.

29.  It was further part of the Conspiracy that defendants would and did discuss harming the parties who committed offenses against PBCT.

30.  It was further part of the Conspiracy that defendants would and did misrepresent, conceal, and hide, and cause to be misrepresented concealed, and hidden, the purposes and acts done in furtherance of the conspiracy.

### D. OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects, design and purposes, the following overt acts, among

37

others, were committed within the Middle District of Florida, and elsewhere:

(1)  In or about September 1993, while fugitives from federal and state proceedings, Defendants JAN WEEKS-KATONA and JASON SPENCER WEEKS did solicit an associate to kill individuals who, they believed, had committed offenses against PBCT.

(2)  From in or about November 1993 to in or about January 1994, defendants created, maintained and updated a chart which depicted the so-called "co-conspirators", whom they believed had committed offenses against PBCT.

(3)  In or about November 1993, while a fugitive, defendants contacted Theodore T. Navolio, and others, in order to attempt to retrieve an AR-15, .223 calibre, Assault Rifle.

(4)  In or about January 1994, defendants possessed two destructive devices.

(5)  On or about January 25, 1994, defendants discussed hitting the individuals who committed offenses against PBCT one at a time, quietly and with stealth in order to let them wonder who would be next.

(6)  From in or about January 1994 to in or about March 1994, while fugitives, defendants did design, manufacture, test, improve and use unlicensed and illegal silencers.

(7)  From in or about January 1994 to in or about March 1994, while a fugitive, Defendant JASON SPENCER WEEKS did design, modify, test, improve and use "dum dum" and "hollow point" ammunition.

38

(8)   The Grand Jury incorporates by reference in their entirety Counts Sixteen through Seventeen as overt acts in furtherance of the Conspiracy.

All in violation of Title 18, United States Code, Section 1117.

### COUNT FIFTEEN

### ILLEGAL POSSESSION OF SILENCERS

From in or about January 1994 to in or about March 1994, in the Middle District of Florida, the defendants,

JASON SPENCER WEEKS
and
JAN WEEKS-KATONA,

did knowingly make and possess firearms, as defined by Title 26, United States Code, Section 5845, to wit, silencers, which were not registered to either of them in the National Firearms Registration Record.

In violation of Title 26, United States Code, Sections 5861(d),(f) and (i), 5871 and Title 18, United States Code, Section 2.

### COUNT SIXTEEN

### ILLEGAL POSSESSION OF A FIREARM AND AMMUNITION BY FUGITIVES

From on or about January 1994 to on or about March 1994, in the Middle District of Florida, the defendants,

JASON SPENCER WEEKS
and
JAN WEEKS-KATONA,

39

being fugitives from justice, did possess, in or affecting interstate commerce, a firearm, to wit, a Remington .22 calibre rifle and ammunition.

In violation of Title 18, United States Code, Section 922(g) and 2.

<u>COUNT SEVENTEEN</u>

<u>ILLEGAL POSSESSION OF FIREARMS BY FUGITIVES</u>

In or about January 1994, in the Middle District of Florida, the defendants,

JASON SPENCER WEEKS
and
JAN WEEKS-KATONA,

being fugitives from justice, did possess, in or affecting interstate commerce, firearms, to wit, two destructive devices.

In violation of Title 18, United States Code, Section 922(g) and 2.

40

## FORFEITURE

The allegations of Counts Six, Seven, Nine and Ten of the Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures, pursuant to the provisions of Title 18, United States Code, Section 982.

1. From the defendants' engagement in any of the violations alleged in Counts Six and Seven, the defendants shall forfeit to the United States any property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the violations, pursuant to Title 18, United States Code, Section 982(a)(2).

2. From the defendants' engagement in any of the violations alleged in Counts Nine and Ten, the defendants shall forfeit to the United States all property, real and personal, involved in such offense and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3. If any of the property described above as being subject to forfeiture, as a result of any act of omission of the defendants:

    (A)   cannot be located upon the exercise of due diligence;

    (B)   has been transferred or sold to, or deposited with, a third party;

    (C)   has been placed beyond the jurisdiction of the Court;

41

     (D)   has been substantially diminished in value; or

     (E)   has been commingled with other property which

         cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 982(b)(1)(B), incorporating Title 21,

United States Code, Section 853(p) to seek forfeiture of any

other property of the defendants' up to the value of the above

forfeitable property.


                A TRUE BILL


                FOREPERSON


LARRY H. COLLETON
United States Attorney


By: _____
    MICHAEL L. RUBINSTEIN
    Assistant United States Attorney
    Chief, Major Crimes Section


By: _____
    ERNEST F. PELUSO
    Assistant United States Attorney


42

No. _ _ _ _ _ _ _ _ _

# UNITED STATES _ _DISTRICT COURT

MIDDLE    District of _ _ _ _ FLORIDA _ _ _ _ _

TAMPA    _ _ _ _ _ Division

## THE UNITED STATES OF AMERICA

vs.

JAN WEEKS-KATONA
JASON SPENCER WEEKS
HARRY W. "BILL" MARRERO, JR.
THEODORE T. NAVOLIO

DAVID J. ROSE

## INDICTMENT

CONSPIRACY; MAIL FRAUD; WIRE FRAUD; MONEY LAUNDERING;
INTERSTATE TRANSPORTATION OF STOLEN PROPERTY; CONSPIRACY TO
MURDER A U.S. DISTRICT JUDGE; POSSESSION OF A FIREARM BY A FUGITIVE;
ILLEGAL POSSESSION OF A SILENCER; OBSTRUCTION OF JUSTICE

_A true bill,_

_ _ _ _ _ _ _ _ George E. Spencer _ _ _
Foreman.

_Filed in open court this_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ day

_of_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ , A.D. 19 _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ Clerk.

_Bail,_ $ _ _ _ _ _ _ _ _ _ _ _

GPO 853 525

FORM OBD-34
SEP 1978